UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MARTHA MARTINEZ, LEONARD and )
DONNA BENAVIDEZ, ELIAS CARO and )
FABBY VALDEZ, LOUIS CASADOS, )
GARY H. CATRON and HOLLIS L. CATRON, )
RAFAEL DIMAS, TIMOTHY DAVID GARCIA )
and GARBRIEL GARCIA, MAXIMILIANO )
GONZALEZ, JACQUELINE GOSSETT, )
JOYCE GARCIA, JESSE VELEZ, )
JOSEPH HERRERA, VIOLA HERRERA , )
LONNIE LUCERO, JEFFREY G. LUJAN, )
MICHAEL LUJAN, RALPH MADRID, )
RONALD MAESTAS, HENRIETTA )
MARTINEZ, RAMON P. MARTINEZ and )
ELDA L. MARTINEZ, )
JOSE C. MONDRAGON, DON A. )
MONTGOMERY, MARCOS MONTOYA, )          Case No.
DEBRA NELSON, BRENDA PARKS, )
JIMMIE PURNINE and FAYE L. PURNINE, )   Division No.
V. HENRY ROTHSCHILD on behalf of THE )
V. HENRY AND JULIANA W. ROTHSCHILD )
REVOCABLE TRUST, GENARO M. ROYBAL )
on behalf of THE GENARO M. AND )
ISABELLE J. ROYBAL REVOCABLE TRUST, )
JOHN SALAZAR, RAELYNN D. VALENCIA )
And MARIA J. VALENICA, FLAVIO VIGIL, )
JOSEPH VIGIL and JOANNE E. VIGIL )
SHIYENNE WHEELER, and DEBORAH )
WILLIAMSON, individually, and on )
behalf of those similarly situated, )
)
                 *Plaintiffs,* )
)
v. )
)
FEDERAL EMERGENCY MANAGEMENT )
AGENCY; )
Serve: Ryan Ellison, United States Attorney )
For the District of New Mexico, )
201 Third St. NW, Suite 900, )
Albuquerque, New Mexico, 87102, and )
)
Todd Blanche, Acting Attorney General )
of the United States, )

1

U.S. Department of Justice,                          )
950 Pennsylvania Avenue, NW,                         )
Washington, D.C. 20530-0001, and                    )
                                                    )
Colt Hagmaier, FEMA Office of Chief Counsel,        )
500 C Street, SW,                                   )
Washington, D.C. 20472;                             )
                                                    )
DEANNE CRISWELL, in her                             )
official capacity as Former Administrator of the    )
Federal Emergency Management Agency,                )
                                                    )
FLUOR FEDERAL SERVICES, INC.,                       )
Serve: Corporation Service Company,                 )
601 N. Turner St., Suite 420,                       )
Hobbs, New Mexico 88240;                            )
                                                    )
B&H CLAIMS SERVICES INCORPORATED,                   )
Serve: Carol Lin,                                   )
1615 Hwy 17, Unit #18,                              )
Young Harris, Georgia 30582;                        )
                                                    )
A2K, INC.,                                          )
Serve: George W. Wilson,                            )
28 CR 5110,                                         )
Booneville, Mississippi 38829;                      )
                                                    )
ATCS, INC.,                                         )
Serve: C T Corporation System,                      )
4701 Cox Rd, Ste. 285,                              )
Glen Allen, Virginia 23060;                         )
                                                    )
MIRAMONTE, LLC,                                     )
Serve: Lisa J. Mitchell,                            )
13 Silverado Road,                                  )
Angel Fire, New Mexico 87710;                       )
                                                    )
JAY MITCHELL, individually, and in his              )
official capacity as Former Director of the         )
Federal Emergency Management Agency,                )
13 Silverado Road,                                  )
Angel Fire, New Mexico 87710;                       )
                                                    )
LISA MITCHELL, individually,                        )
13 Silverado Road,                                  )
Angel Fire, New Mexico 87710;                       )

2

|  |  |
|---|---|
| **MAIA CONSULTING LLC,** | ) |
| **Serve: Jennifer Carbajal,** | ) |
| **64 Forest Drive E,** | ) |
| **Pendaries Village,** | ) |
| **Rociada, NM 87742;** | ) |
|  | ) |
| **JENNFIFER CARBAJAL, individually, and in** | ) |
| **her official capacity as Former Deputy Director** | ) |
| **Of the Federal Emergency Management Agency,** | ) |
| **64 Forest Drive E,** | ) |
| **Pendaries Village,** | ) |
| **Rociada, NM 87742;** | ) |
|  | ) |
| **Any necessary JOHN AND JANE DOE** | ) |
| **human being; and** | ) |
|  | ) |
| **Any JOHN AND JANE DOE** | ) |
| **CORPORATE ENTITIES,** | ) |
|  | ) |
| *Defendants.* | ) |

## COMPLAINT

### INTRODUCTION

1. Plaintiffs file this action, appeal, and/or hereby challenge Defendant FEMA, and the other related Defendants stated herein for not properly administering the "Hermit's Peak/Calf Canyon Fire Assistance Act," and related regulations, issued by the U.S. Department of Homeland Security, Federal Emergency Management Agency ("FEMA").

2. Defendants' conduct unlawfully denies victims of the Hermit's Peak and Calf Canyon Fires (hereinafter "HPCC Fire" or "HPCC Complex") compensation to which they are entitled under the Hermit's Peak Calf Canyon Fire Assistance Act ("HPCCFAA"). Under the HPCCFAA, the laws of the State of New Mexico shall apply to the calculation of damages.

3. Under New Mexico law, wildfire victims are entitled to economic and/or noneconomic damages for interference with personal comfort, annoyance, and inconvenience.

Defendants conduct and final determinations are unlawful, and in many cases Defendants categorically denied compensation for any noneconomic damages, including interference with personal comfort, annoyance, and inconvenience.

4. For many if not all of the Plaintiffs, the aspect of Defendants' conduct and final determinations that denies compensation for interference with personal comfort, annoyance, and inconvenience was not the product of reasoned decision-making: There is little to no evidence Defendant attempted to consider its impact on Hermit's Peak Fire victims, nor is there evidence Defendant reconciled with governing law (i.e., the plain language of the HPCCFAA and New Mexico law).

5. The result of Defendants' conduct is that the harmful effects are widespread: It will deny Plaintiffs and hundreds of similarly situated Hermit's Peak Fire victims hundreds of millions of dollars in collective compensation to which they are entitled under the HPCCFAA.

6. Plaintiffs seek judicial and other appropriate relief against FEMA to preclude it from categorically denying compensation to Hermit's Peak Fire victims for noneconomic damages for interference with personal comfort, annoyance, and inconvenience.

7. Plaintiffs also seek damages resulting from but not limited to Defendants' failure to properly calculate **burn scar severity**, misleading pro-se and other injured parties by misleading and manipulating the determinations in favor of Defendants.

8. Plaintiffs also seek damages resulting from but not limited to Defendants' failure to properly award damages for potential and/or actual **flood and/or water** damages resulting from wildfire devastation to the ecosystem, misleading pro-se and other injured parties by misleading and manipulating the determinations in favor of Defendants.

4

9.  Plaintiffs also seek damages resulting from but not limited to Defendants' failure to hire and/or properly find trained and **certified smoke, water, and/or wildfire adjusters** and/or professionals, to properly compensate Plaintiffs, misleading pro-se and other injured parties by misleading and manipulating the determinations in favor of Defendants.

10. Also demonstrating the need for this class action (and possible sub-class actions), Plaintiffs also seek damages resulting from but not limited to Defendants' failure upon information and belief, to actually file and maintain claims made by victims and survivors; in other words, despite funding by the State of Mexico for advocates for its citizens to help navigate Defendants' process, some claimants had their claims ignored and/or lost completely.

11. The result of the foregoing and/or succeeding paragraphs and information is that Plaintiffs were not properly compensated after the HPCC Fire.

12. Any allegation is stated upon information and/or belief unless expressly stated otherwise.

13. Also, programs using artificial intelligence and/or spell check were used in the creation of this document.

## JURISDICTION & VENUE

14. This Court has jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, and 28 U.S.C. §§ 1346, 2671 because a United States agency is a defendant.

15. This Court has jurisdiction under 5 U.S.C. §§ 701-706, and 28 U.S.C. §§ 2201, 2202, because this action is brought by persons adversely affected by agency action, and seeks to right a legal wrong due to agency action as set forth in 5 U.S.C. §§ 701, 702.

16. Defendants conduct and final determinations, constitute a final agency action subject to judicial review under 5 U.S.C. §§ 704, 706. And Defendants conduct and final

determinations shows an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a). Accordingly, this Court has jurisdiction to grant declaratory relief, injunctive relief, and/or other relief pursuant to 5 U.S.C. §§ 701-706, and 28 U.S.C. §§ 2201, 2202. Venue is proper in this Court under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1)(B)-(C) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, a substantial part of property that is the subject of the action is situated in this judicial district, and/or Plaintiffs reside in this judicial district.

## PARTIES

17. Plaintiff MARTHA MARTINEZ currently resides in Albuquerque, New Mexico. Before the Hermit's Peak Fire, Martha resided in a single-family home on her own parcel on a one-acre piece of land. The Hermit's Peak Fire destroyed her home with virtually all her personal possessions inside. Currently, Martha resides in a home in Albuquerque while she waits to rebuild. As a direct and proximate result of the Hermit's Peak Fire, Martha has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of her lost property.

18. Plaintiffs LEONARD BENAVIDEZ and DONNA BENAVIDEZ currently reside in San Jose, New Mexico. Before the Hermit's Peak Fire, Leonard and Donna resided in a custom single-family home on a large 241-acre plot of beautiful forest for approximately 25 years. The Hermit's Peak Fire destroyed their home with virtually all their personal possessions inside. Leonard and Donna have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

6

19. Plaintiffs ELIAS CARO and FABBY VALDEZ currently reside in Las Vegas, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Elias and Fabby have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

20. Plaintiff LOUIS CASADOS resides near Cleveland, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Louie has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

21. Plaintiffs GARY H. CATRON and HOLLIS L. CATRON, reside near Divide, Colorado. Before the Hermit's Peak Fire, Gary and Hollis lived together in a large single-family home near Rociada for five years. As a direct and proximate result of the Hermit's Peak Fire, Gary and Hollis have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

22. Plaintiff RAFAEL DIMAS, resides near Serafina, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Rafael has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

23. Plaintiffs TIMOTHY DAVID GARCIA and GABRIELA GARCIA, reside near Rociada, New Mexico. Before the Hermit's Peak Fire, Reynaldo and Kathy lived together in a large single-family home near Rociada . As a direct and proximate result of the Hermit's Peak Fire, Timothy and Gabriela have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

24. Plaintiff MAXIMILIANO GONZALES resides near Glorietta, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Maximiliano has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

25. Plaintiffs JACQUELINE GOSSETT, JOYCE GARCIA, and JESSE VELEZ, resides near Fontana, California. As a direct and proximate result of the Hermit's Peak Fire, Jacqueline, Joyce, and Jesse have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

26. Plaintiff JOSEPH HERRERA lived near Las Vegas, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Joseph has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.  Upon information and belief, Mr. Herrera claim was lost by Defendant FEMA and/or as a result of one or more of the Defendants' conduct.

27. Plaintiff Viola HERRERA lives near Las Vegas, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Viola has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of her lost property.  For certain, Plaintiff Viola Herrera was not properly compensated, inter alia, for the burn scar severity damage caused to her property, for future flood damage and loss, for smoke damage, and/for emotional distress.

28. Plaintiff LONNIE LUCERO resides near Las Vegas, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Lonnie has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

8

29. Plaintiff JEFFREY G. LUJAN resides near Glorieta, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Jeffrey has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

30. Plaintiff MICHAEL LUJAN resides near Cleveland, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Michael has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

31. Plaintiff RALPH MADRID resides near Clovis, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Ralph has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

32. Plaintiff RONALD MAESTAS resides near Las Vegas, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Ronald has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

33. Plaintiff HENRIETTA MARTINEZ resides near Rociada, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Henrietta has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of her lost property.

34. Plaintiffs RAMON P. MARTINEZ and ELDA L. MARTINEZ reside near Rio Rancho, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Ramon and Elda

have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

35. Plaintiff JOSE C. MONDRAGON resides near Rio Rancho, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Jose havs suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

36. Plaintiff DON A. MONTGOMERY resides near Edmond, Oklahoma. Before the Hermit's Peak Fire, Don lived on a property of 7-8 acres containing two single-family homes near Rociada. As a direct and proximate result of the Hermit's Peak Fire, Don has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

37. Plaintiff MARCOS MONTOYA resides near Mora, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Marcos has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

38. Plaintiff DEBRA NELSON resides near Las Vegas, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Debra has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of her lost property.

39. Plaintiff BRENDA PARKS resides near Las Vegas, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Brenda has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of her lost property.

40. Plaintiffs JIMMIE PURNINE and FAYE L. PURNINE reside near Fay, Oklahoma. Before the Hermit's Peak Fire, Jimmie and Faye lived together in a large single-family home near Rociada for five years. As a direct and proximate result of the Hermit's Peak Fire, Jimmie and Faye have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

41. Plaintiff V. HENRY ROTHSCHILD on behalf of THE V. HENRY AND JULIANA W. ROTHSCHILD REVOCABLE TRUST resides near Santa Fe, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, V. Herny and Juliana have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

42. Plaintiff GENARO M. ROYBAL on behalf of THE GENARO M. AND ISABELLE J. ROYBAL REVOCABLE TRUST resides near Pecos, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Genaro and Isabelle have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

43. Plaintiff JOHN SALAZAR resides near Las Vegas, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, John has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

44. Plaintiffs RAELYNN D. VALENCIA and MARIA J. VALENCIA reside near Pecos, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Raelynn and Maria have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

45. Plaintiff FLAVIO VIGIL resides near Las Vegas, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Flavio has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of his lost property.

46. Plaintiffs JOSEPH VIGIL and JOANNE E. VIGIL reside near Las Vegas, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Joseph and Joanne have suffered and continue to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of their lost property.

47. Plaintiff SHIYENNE WHEELER resides near Sapello, New Mexico. As a direct and proximate result of the Hermit's Peak Fire, Shiyenne has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of her lost property.

48. Plaintiff DEBORAH WILLIAMSON resides near Brownfield, Texas. Before the Hermit's Peak Fire, Deborah lived in a large single-family home near Rociada for five years. As a direct and proximate result of the Hermit's Peak Fire, Deborah has suffered and continues to suffer significant interference with personal comfort, annoyance, and inconvenience beyond the economic cost of her lost property.

49. Defendant FEMA is an executive agency of the United States government, and bears responsibility in whole or part for the acts and/or omissions complained of in this complaint, including promulgating the Rule. Under the HPCCFAA, FEMA is directed to receive, process, and pay claims in accordance with the HPCCFAA.[1]

---

[1] See Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(a)(2), 136 Stat. 2168, 2170 (2022).

50. Defendant DEANNE CRISWELL is FEMA's duly-appointed and Senate-confirmed administrator, and bears responsibility in whole or part for the acts and/or omissions complained of in this complaint, including promulgating the Rule. Criswell is sued only in her official capacity as FEMA administrator. Subsequent references to "FEMA" include both FEMA and Criswell unless otherwise noted.

51. Defendant FLUOR FEDERAL SERVICES, INC. (hereinafter "FLUOR") is a contractor of Defendant FEMA, and is a Foreign Profit Corporation formed in Washington. Defendant FLUOR can be served with process via its registered agent.

52. Defendant B&H CLAIMS SERVICES INCORPORATED (hereinafter "B&H") is a subcontractor of Defendant FLUOR, and is a Domestic Profit Corporation formed in Georgia. Defendant B&H can be served with process via its registered agent.

53. Defendant A2K, INC. (hereinafter "A2K") is a subcontractor of Defendant FLUOR, and is a Domestic Profit Corporation formed in Mississippi. Defendant A2K can be served with process via its registered agent.[2]

54. Defendant ATCS, INC. (hereinafter "ATCS") is a subcontractor of Defendant FLUOR, and is a Domestic Profit Corporation formed in Virginia. Defendant ATCS can be served with process via its registered agent.

---

[2]     Defendant A2K has filed an action against Defendants Fluor and B&H, for its unlawful anti-trust and monopolistic tactics in New Mexico.  See 3:26-cv-00206 in U.S. N.D. Tex, the Complaint of which is attached herein as Exhibit 1.  A2K is included as a Defendant here because upon information and belief, A2K also is liable for the fraud and/or mistakes repeatedly and consistently committed against the putative Plaintiff Class.  In fact, undersigned Counsel has included so many named Plaintiffs to show, in part, the number of human beings affected by these Defendants' reckless disregard to distribute disaster relief ordered by Congress and the President of the United States.  While A2K finds itself in an unfortunate situation, they too did little to establish a better system for the victims of the HPCC Fire. Plaintiffs believe they are simply unhappy to be cut out from a situation where these Defendants are more interested in self-dealing and enriching themselves than those who have been waiting for more than four years for proper disaster relief.

13

55. Defendant MIRAMONTE, LLC (hereinafter "MIRAMONTE") is a subcontractor of Defendant FLUOR, and is a Domestic Profit Corporation formed in New Mexico. Defendant MIRAMONTE can be served with process via its registered agent.

56. Defendant JAY MITCHELL (hereinafter "J. MITCHELL") is the former Director of FEMA and Co-Owner of Defendant MIRAMONTE, and can be served at 13 Silverado Road, Angel Fire, New Mexico, 87710.

57. Defendant LISA MITCHELL (hereinafter "L. MITCHELL") is the wife of Former Director of FEMA and Co-Defendant J. MITCHELL, and Co-Owner of Defendant MIRAMONTE, and can be served at 13 Silverado Road, Angel Fire, New Mexico, 87710.

58. Defendant MAIA CONSULTING LLC (hereinafter "MAIA") is a subcontractor of Defendant FLUOR, and is a Domestic Limited Liability Company formed in New Mexico. Defendant MAIA can be served with process via its registered agent.

59. Defendant JENNIFER CARBAJAL (hereinafter "CARBAJAL") is the former Deputy Director of FEMA and Owner of Defendant MAIA, and can be served at 63 Forest Drive East, Pendaries Village, Rociada, New Mexico 87742.

## BACKGROUND

### I. The federal government enacted the HPCCFAA to compensate victims of the Hermit's Peak Fire.

60. On April 6, 2022, the U.S. Forest Service initiated a prescribed burn on federal land in the Santa Fe National Forest in San Miguel County, New Mexico. The prescribed burn got out of control, resulting in a wildfire ("Hermit's Peak Fire") that spread to adjacent, non-federal land.[3]

---

[3] Id., § 102(a)(1)-(4), 136 Stat. at 2168.

61. The President declared the Hermit's Peak Fire "a major disaster," and Congress found that it forced evacuations of, damaged, or destroyed state, local, tribal, and private property in Colfax, Mora, and San Miguel counties in New Mexico.[4]

62. Congress determined that "the United States should compensate the victims of the Hermit's Peak Fire."[5]

63. On September 30, 2022, Congress enacted-and the President signed-the HPCCFAA.[6]

64. The HPCCFAA's stated purpose is "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire."[7]

65. Congress allocated $3.95 billion to compensate victims of the Hermit's Peak Fire under the HPCCFAA.[8]

## II. The HPCCFAA entitles claimants to proper compensation for damage to property and interference with personal comfort, inconvenience, and annoyance.

66. The HPCCFAA states that claimants are entitled to "payment under this Act" for "actual compensatory damages."[9]

67. The HPCCFAA repeatedly invokes New Mexico law to define the scope of damages recoverable under the Act. First, the HPCCFAA flatly states "the laws of the State of New Mexico shall apply to the calculation of damages."[10] Second, the HPCCFAA expressly

---

[4] Id., § 102(a)(5)-(6), (9), 136 Stat. at 2168-69.

[5] Id., § 102(a)(10), 136 Stat. at 2169.

[6] Hermit's Peak/Calf Canyon Fire Assistance, 88 Fed. Reg. at 59,731.

[7] Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 102(b)(1), 136 Stat. 2168, 2169 (2022).

[8] FEMA, FAQ: Hermit's Peak/Calf Canyon Fire Assistance Act Final Rule (Aug. 28, 2023), https://www.fema.gov/fact-sheet/faqhermits-peakcalf-canyon-fire-assistance-act-finalrule#:~:text=The%20Hermit%27s%20Peak%2FCalf%20Canyon.major%20concerns%20from%20the%20community.

[9] Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2170 (2022).

[10] Id., § 104(c)(2), 136 Stat. at 2170; see also 44 C.F.R. § 296.21(a) ("The laws of the State of New Mexico will apply to the calculation of damages.").

incorporates the definition of a compensable "injury" from the FTCA, which in turn compensates "claimant[s] in accordance with the law of the place where the act or omission occurred."[11]

68. Under New Mexico law, a wildfire that damages or disrupts the real or personal property of a "considerable number of people" is a "nuisance."[12]

69. And under New Mexico law, nuisance victims are entitled to noneconomic damages for interference with personal comfort, annoyance, and inconvenience in addition to their economic losses. [13]

70. Accordingly, under the HPCCFAA, FEMA must award claimants noneconomic damages for interference with personal comfort, annoyance, and inconvenience.

**III.    FEMA's unlawfully refuses to award claimants compensation for proper compensation for damage to property and interference with personal comfort, inconvenience, and annoyance.**

---

[11] Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(a)(1), 136 Stat. 2168, 2170 (2022) ("Each injured person shall be eligible to receive from the United States compensation for injury suffered by the injured person as a result of the Hermit's Peak/Calf Canyon Fire."); id., § 103(5), 136 Stat. at 2169 ("The term 'injury' has the same meaning as the term 'injury or loss of property, or personal injury or death' as used in section 1346(b)(1) of title 28, United States Code."); 44 C.F.R. § 296.4 ("Injury' [under the HPCCFAA] means 'injury or loss of property, or personal injury or death,' as used in the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1)."); 28 U.S.C. § 1346(b)(1) (making "the United States" liable "for money damages under circumstances where a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred"].)

[12] *City of Sunland Park v. Harris News, Inc.*, 124 P.3d 566, 577 (N.M. Ct. App. 2005); *New Mexico v. Gen. Elec. Co.*, 335 F. Supp. 2d 1185, 1239-41 (D.N.M. 2004).

[13] *Aguayo v. Village of Chama*, 449 P.2d 331, 333 (N.M. 1969) ["[T]he rule [for nuisance claims] is that personal damages [for discomfort, annoyance, etc.] are recoverable in addition to, or separate from, damages for diminution in rental or use value."]; *Padilla v. Lawrence*, 685 P.2d 964, 969 (N.M. Ct. App. 1984) ("A plaintiff in a private nuisance action may seek compensation for interference with personal comfort as well as for diminution in property value."); see also N.M. Const., art. II, § 4 ("All persons are born equally free, and have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness.").

71. The HPCCFAA directed FEMA to administrate claims under the Act, and to "publish in the Federal Register regulations for the processing and payment of claims under this Act."[14]

72. On August 29, 2023, FEMA published its "Final rule"-i.e., the Rule-in the Federal Register. [15]

73. Defendants consistent conduct and final determinations have unequivocally stated that, as a categorical matter, FEMA will not award any noneconomic damages, including interference with personal comfort, annoyance, and inconvenience. Specifically, many Plaintiffs were affected by Defendants Rule stating the "allowable damages [under the HPCCFAA] excludes noneconomic damages," and thus that the HPCCFAA "does not authorize FEMA to provide noneconomic damages for nuisance and trespass, such as "annoyance, discomfort, and inconvenience."[16]

74. But nothing in the HPCCFAA indicates that noneconomic damages in general-or damages for interference with personal comfort, annoyance, and inconvenience in particular-are excluded from the damages recoverable under the HPCCFAA.

75. In fact, **this Court has now ruled that non-economic damages and New Mexico Law does apply** to claims determined by Defendants. *See* Case 1:23-cv-00908-JB-JFR Documents, including but not limited to, 61 and 81 (U.S. D.N.M. 2024-present); pending appeal to the Tenth Circuit.

76. To the contrary, and despite knowing the New Mexico Bar Association and under authorities stating New Mexico law applied, Defendants long ignored that the HPCCFAA

---

[14] Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 103(a)(1), 136 Stat. 2168, 2169 (2022); id., § 104(f)(1), 136 Stat. at 2173.

[15] Hermit's Peak/Calf Canyon Fire Assistance, 88 Fed. Reg. 59,730.

[16] Hermit's Peak/Calf Canyon Fire Assistance, 88 Fed. Reg. at 59,743-59,744; see also id. at 59,744 ("The Act does not provide for noneconomic damages for nuisance and trespass.").

states that claimants are entitled to "payment under this Act" for "actual compensatory damages."[17]

77. And under New Mexico law, and the common law generally, "actual compensatory damages" includes economic and noneconomic damages.[18]

78. Moreover, the only recoveries the HPCCFAA expressly excludes are "interest before settlement or payment of a claim," and "punitive damages."[19]

79. Those are illuminating caveats: Prejudgment interest is often considered an element of "compensatory damages."[20] By contrast, punitive damages are not typically considered actual compensatory damages.[21]

---

[17] Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2170 (2022).

[18] *Morga v. Fedex Ground Package Sys., Inc.*, 420 P.3d 586, 596 (N.M. Ct. App. 2018) (recognizing the "jury's right to award all compensatory damages, including any non-economic damages"); e.g., *Guilford v. Weidner Investment Services, Inc*., 522 P.3d 1085, 1099 (Alaska 2023) ("The term 'actual damages' does not distinguish between economic and non-economic damages, but between 'proven injury or loss' and exemplary damages such as punitive damages or treble damages."); *Gorsich v. Double B Trading Co., Inc.*, 893 P.2d 1357, 1363 (Colo. App. 1994) ("Actual damages' include non-economic damages as well as economic damages."); *Lebron v. Gottlieb Mem'l Hosp*., 930 N.E.2d 895, 904 (Ill. 2010) ("The sum of noneconomic and economic damages constitute[s] 'compensatory damages."); *Miller v. Johnson*, 289 P.3d 1098, 1112 (Kan. 2012) ("After all, noneconomic damages are a subset of compensatory damages."), abrogated on other grounds by *Hilburn v. Enerpipe Ltd*., 442 P.3d 509 (Kan. 2019); *Gourley v. Neb. Methodist Health Sys., Inc*., 663 N.W.2d 43, 80 (Neb. 2003) (Gerrard, J., concurring) ("There are two separate types of compensatory damages, economic and noneconomic."); *Bailets v. Pennsylvania Tpk. Comm'n*, 181 A.3d 324, 329 (Pa. 2018) ("[A]ctual damages must include compensation for noneconomic damages."); *Meals v. Ford Motor Co.*, 417 S.W.3d 414, 420 (Tenn. 2013) ("A plaintiff is also entitled to recover compensatory damages for non-economic loss or injury."); *Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013) ("Actual or compensatory damages include general damages (which are non-economic damages such as for loss of reputation or mental anguish) and special damages (which are economic damages such as for lost income).") *Beasley v. GEICO Gen. Ins. Co.*, 517 P.3d 500, 516 (Wash. Ct. App. 2022) ("[A]ctual damages' includes noneconomic damages.").

[19] Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3)(B), 136 Stat. 2168, 2170 (2022).

[20] *Gallo v. Dep't of Banking & Fin.*, 749 So.2d 582, 584 (Fla. Dist. Ct. App. 2000) ("The common law in Florida is that prejudgment interest is an element of compensatory damages."); *Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 437 (Colo. 2008) ("Prejudgment interest in a personal injury case is an element of compensatory damages, 'awarded to compensate the plaintiff for the time value of the award eventually obtained against the tortfeasor." (quoting *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 19 (Colo. 1990))).

[21] E.g., *Skipper v. S. Cent. Bell Tel. Co.*, 334 So.2d 863, 866 (Ala. 1976) ("Actual damages include all except that category called punitive, vindicative, or exemplary; they are the equivalent of compensatory damages.").

80. The fact Congress expressly excluded items that are (prejudgment interest) and are not (punitive damages) typically considered actual compensatory damages-but did not expressly exclude noneconomic damages-is further confirmation Congress did not intend to exclude them.

81. Accordingly, contrary to the plain text and stated aim of the HPCCFAA, and New Mexico law, Defendants' conduct and final determinations unlawfully denie(s/d) claimants (here, Plaintiffs) compensation for interference with personal comfort, annoyance, and inconvenience.

82. For sure, Plaintiffs suffered systemic delays beyond the 180 days required by the HPFFA, a lack of communication, a general lack of due process, inter alia, including but not limited to unbiased decision makers resulting in only about $3 Billion of the $5.5 Billion allotted for the HPCCFFA by Congress.[22]

83. Accordingly, Defendants should be held accountable, and Congress likely needs to appropriate more money because of Defendants' reckless, consistent, and repeated acts of gross negligence, fraud, and/or greed.

## IV. RICO ALLEGATIONS

84. FEMA is not a "person" within the meaning of 18 U.S.C. § 1961(3).

---

[22] Stating the HPCCFAA requires that New Mexico Law applies and, inter alia, that claims must be paid in 180 days.  See https://www.sbnm.org/Portals/NMBAR/CLE%20and%20Events/Annual%20Meeting/Annual%20Meeting%202023/materials/Hermit's%20Peak%20Calf%20Canyon%20Wildfire%20Damages%20Claims%20Update%20and%20Negligence%20Refresher%20Presentation.pdf?ver=GTElvBq0H8M4ZqVQ3ZxkCw%3D%3D#:~:text=Page%2016,T%20H%20E%20U%20N%20I%20V%20E%20R%20S%20I%20T%20Y%20O%20F%20N%20E%20W%20M%20E%20X%20I%20C%20O%20S%20C%20H%20O%20O%20L%20O%20F%20L%20A%20W (last visited April 6, 2026), attached hereto as Exhibit 2.

85. However, the other named Defendants are each a "person" under 18 U.S.C. § 1961(3).

86. Upon information and belief, and years of observation, FEMA struggled to properly establish and administer an executive claims process as required by the HPFFA.

87. Furthermore, FEMA and/or the Forest Service are generally not in the business of being held liable for forest fires set and/or allowed to burn by their personnel. It is unusual for Congress and the President to assume liability for a wildfire caused by the Forest Service, despite the Forest Service's consistent negligence involving wildfire(s).[23] Consequently, in this case, FEMA and the federal government are liability for the HPCC Fire.

88. Upon information and/or belief employers in New Mexico have long struggled to find a qualified and/or affordable labor force. See https://www.krwg.org/krwg-news/2024-04-24/new-mexico-employers-have-the-4th-biggest-hiring-struggle-in-the-u-s (last visited April 4, 2026).

89. The federal government is no stranger to this problem.

90. Thus, at best, FEMA too struggled to find proper and trustworthy personnel to execute the HPFFA and the thousands of claims made as a result of the HPFFA.

91. Generally, FEMA struggled to handle the numerous claims upon which with they were bombarded with from people making claims within a 10-20 mile radius around the fire.

---

[23] In addition to the HPCC Fire, observers may disagree in logic as to why or how the United States Forest Service is negligent or derelict, many arrive at the same conclusion over the past forty plus years. *See e.g.,* referencing over forty years of negligence, https://www.sfgate.com/california-wildfires/article/Dixie-Fire-Forest-Service-Butte-County-supervisor-16409256.php# (last visited April 6, 2026); Beachie Creek Fire in Oregon dismissed despite USFS negligence, https://www.salemreporter.com/2024/12/18/judge-dismisses-33-million-timber-lawsuit-against-u-s-forest-service-over-2020-wildfire-response/#:~:text="Plaintiffs%20may%20be%20right.,:%20info@salemreporter.com. (last visited April 6, 2026); the Caldor Fire in California in 2021, https://www.cbsnews.com/news/caldor-fire-california-us-forest-service-60-minutes-transcript-2022-10-02/ (last visited April 6, 2026); attached hereto as Exhibits 3, 4, and 5.

92. However, upon information and belief, though likely due to general incompetence, several different types of people (races, religious, and/or ethnic groups for instance) felt discriminated against: often because of race and/or the language they spoke.

93. Upon information and/or belief, FEMA did discriminate against larger property owners believing they were doubling dipping and/or "did not need any more money" despite suffering financial and/or emotional damages.

94. Upon information and belief, FEMA (and/or its contractors and/or sub-contractors) has frequently discriminated against, slighted, and defrauded victims of disasters in other communities (including but not limited to):

   a. New York: see *Ramey v. U.S. Forensic, LLC*, 2:14-cv-06861, U.S. District Court, Eastern District of New York (a copy of the Complaint is attached hereto as Exhibit 6), where insurance companies working in partnership with FEMA frequently and repeatedly under paid victims' claims following Hurricane Sandy.

   b. Ohio: https://www.theguardian.com/us-news/2023/feb/26/trump-fox-news-east-palestine-ohio-right-wing-race-baiting (last visited March 21, 2026);

   c. Florida: in Lake Placid, Florida following Hurricanes Helene and Milton, FEMA relief workers were allegedly told to avoid "avoid homes advertising Trump." See attached Exhibit 7 (Complaint from Case No. 2:24-cv-14365 in U.S. S.D. Fla.).

   d. California: there is rarely enough aid and/or resources to help all parties distressed after a catastrophe, yet often Latinos and/or other poor communities are disproportionately affected and compensated. See https://lulac.org/wildfires/ (last visited March 21, 2026).

e. New Mexico: very recently, Defendant A2K, has filed suit against Defendants Fluor and B&H regarding those companies' unlawful conduct concerning the handling of FEMA claims in New Mexico.[24]

95. One could claim, upon information and belief, that FEMA was incompetent handling HPCCFFA claims, yet at a minimum Defendants were overwhelmed and resulting human bias often took different forms depending on Defendants' personnel involved.

96. This included, in many cases, some of Defendants' personnel simply taking what they could when they could, in other words, self-dealing.

a. See https://sourcenm.com/2026/02/12/nm-wildfire-claims-office-director-on-administrative-leave-following-six-figure-payout/ (last visited April 6, 2026), attached as Exhibit 8.

b. Director Jay Mitchell received approximately $250,000.00, and his wife Lisa J. Mitchell and/or her business Miramonte, LLC received $258,408.00 (POL-041390; LLI 00168359) for losses due to smoke, soot, and ash, along with business interruption.  See https://www.youtube.com/watch?v=MEGW-c8iszA (last visited March 23, 2026).

c. Further, Deputy Director Jennifer Carbajal was also placed on administrative leave after receiving a six-figure settlement.  See https://www.kob.com/news/4-investigates/4-investigates-fema-deputy-director-receives-six-figure-payout/  (last visited April 6, 2026), attached as Exhibit 9.

---

[24]    Again, Defendant A2K has filed an action against Defendants Fluor and B&H, for its unlawful anti-trust and monopolistic tactics in New Mexico.  See 3:26-cv-00206 in U.S. N.D. Tex, the Complaint of which is attached herein as Exhibit 1.  As explained above, A2K is included as a Defendant here because upon information and belief A2K also is liable for the fraud and/or mistakes repeatedly and consistently committed against the putative Plaintiff Class.

    d.   Deputy Director Carbajal also accepted payments for Maia Consulting, Inc.

97. Upon information and belief Defendants Jay Mitchell, his wife, and Carbajal were not the only FEMA personnel engaged in self-dealing; many others did for themselves, their families, and/or friends.

<b>The General Fraudulent Enterprise and The Fluor Enterprise</b>

98. Fluor is a "person" within the meaning of 18 U.S.C. §1961(3).

99. Based upon Plaintiffs' current knowledge, any and/or all Defendants (though not Defendant FEMA by RICO definition), engaged in a General Fraudulent Enterprise to submit incorrect and/or fraudulent determinations to pro se claimants who did not have an attorney or the benefit of subject matter experts to help establish proper damage models.  Defendants knew this and took advantage of Plaintiffs.

100.    Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals and entities associated in fact that Plaintiffs refer to as the Fluor Enterprise: Defendants (1) Fluor; (2) B&H; (3) A2K; and (4) FEMA (they knew or know but are not a person under RICO).

101.    Other Defendants and/or people could be involved in the Fluor Enterprise, but Plaintiffs are not certain at this time.

102.    The Fluor Enterprise is an ongoing organization which engages in, and whose activities affect, interstate commerce. The members of the Fluor Enterprise function as a continuing unit as described below and share the common purpose of creating illegitimate determinations to be used to fraudulently deny, in whole or in part, claims for their individual and collective

economic gain.

103.     While the Fluor Enterprise participates in and are members and parts of the Fluor Enterprise, they also have an existence separate and distinct from the General Fraudulent Enterprise. The common goal was to capture market share from Defendant FEMA in New Mexico on the HPCC, and inter alia, in the East Coast Disaster Relief Market (historically, more profitable), reduce payments on legitimate claims, and drive up costs of claims handling and investigation of these claims. Which then generated profits for the enterprise as a whole and for participating individuals. Defendants also benefitted by avoiding a government audit through inflating costs and reducing claims paid.

104.     Defendant A2K's exact involvement is unknown, but upon information and belief, A2K seems to regret no longer being involved in this profitable enterprise. Further, too many Plaintiffs in the putative class were negatively damaged by incorrect and/or fraudulent determinations for A2K to not have been involved or to not have had knowledge from 2022-2025.

105.     In order to successfully defraud Plaintiffs and Class Members in the manner set forth above, the Fluor Enterprise and/or any and/or all Defendants needed a system that would allow them to deny and/or fraudulently reduce claims, in whole or in part, and thereby avoid an audit by FEMA.

106.     In furtherance of its unlawful enterprise, the Fluor Enterprise and Defendants in the General Fraudulent Enterprise routinely submitted incorrect

and/or fraudulent determinations to Defendant FEMA which were not accurate. Based on information and belief, these determinations were transmitted through U.S. mail and/or email and/or at least some payments were delivered via wire transfers. These determinations and the resulting payments were fraudulent and the use of U.S. mail, email, and wire transfers to transmit them is a violation of 18 U.S.C. § 1341 and §1343.

### Predicate Acts

107.    Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (relating to mail fraud) and 18 U.S.C. §1343 (relating to wire fraud and use of email). As set forth below, the Fluor Enterprise and individuals at FEMA, have and continue to engage in conduct violating each of these laws to effectuate their scheme.

108.    For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations, or promises, the Fluor Enterprise and individuals at FEMA, in violation of 18 U.S.C. §1341, placed in post offices and/or in authorized repositories, matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to fraudulent and/or incorrect documents from claimants, invoices to claimants (in fact one Plaintiff was billed on Plaintiff's determination for "claims preparation expenses"),

correspondence, payments, and altered determinations.

109.    For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, Defendants, the Fluor Enterprise and individuals at FEMA are also in violation of 18 U.S.C. §1343, transmitted and received by wire matter, email, and things which include but are not limited to fraudulent and/or incorrect documents from claimants, invoices to claimants (in fact one Plaintiff was billed on Plaintiff's determination for "claims preparation expenses"), correspondence, payments, and altered determinations.

110.    Other communications sent through or received from the Postal Service, commercial carrier, or interstate wire transmission by Defendants, the Fluor Enterprise, and individuals at FEMA included information or communications in furtherance of, or necessary to, effectuating the scheme.

111.    Defendants, the Fluor Enterprise, and individuals at FEMA's misrepresentations, acts of concealment, and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and the Class and for the purpose of denying Plaintiffs' claim and the claims of Class Members. This was done for the purpose of reducing paid claims to avoid an audit which would lead to the detection of improper payments and increased cost of claims handling to the direct financial benefit of Defendants.

112.    Defendants, the Fluor Enterprise, and individuals at FEMA either knew or recklessly disregarded the fact that the misrepresentations and

omissions described above were material and would be relied upon by Plaintiffs and Class Members. Plaintiffs and Class Members were defrauded as a result of the misrepresentations and/or omissions as set forth above. In many instances, the fraud involved tens of thousands, hundreds of thousands in some cases, even millions of dollars in legitimate determinations that were denied and/or fraudulently reduced.

113.    As a result, Defendants, the Fluor Enterprise, and individuals at FEMA have fraudulently generated determinations in order to obtain financial gain and support fees and expenses billed to Defendant FEMA. These Defendants were able to charge for unwarranted services and other fees based upon their participation in fraudulently denying legitimate determinations. Defendants and the Fluor Enterprise routinely submitted charges for services which bore no relation to the actual amount of work performed on an individual case. Defendants FEMA thus paid these fraudulent invoices from Defendants without question using the funds of the federal government.

114.    Defendants intentionally denied or underpaid determinations made by claimants. By diminishing the amounts paid on determinations, Defendants avoided a government audit on payment amounts and on the actual cost of administering the HPCCFAA program. Additionally, upon information and belief, and based upon other FEMA fraud across the country, due to the reverse incentives, the private Defendants stood to benefit directly from increasing claims handling costs upon which their payments from FEMA were based.

27

115.     Plaintiffs and Class Members have been injured in their business or property by Defendants' overt acts of mail, email, and wire fraud. Plaintiffs' legitimate claim for their proper determinations were denied by Defendants based on fraudulent determinations, burn scar data, and improper calculation of damages as stated above which directly reduced the amount paid to Plaintiffs.

**Pattern of Racketeering Activity**

116.     Defendants, the Fluor Enterprise, and individuals at FEMA have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§1341 and 1343 as described above, within the past ten years. In fact, Defendants, the Fluor Enterprise, and individuals at FEMA have committed multiple acts of racketeering activity. Plaintiffs' and Class Members' claims were fraudulently denied in whole or in part on different dates, proving separate and definable predicate acts of racketeering activity. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results, and impacted similar victims, including Plaintiffs and Class Members.

117.     The multiple acts of racketeering activity which Defendants committed and/or conspired to commit, or aided and abetted acts, were related to each other and amount to and pose a threat of continued racketeering activity and

therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

## Class Action Allegations

118.    Plaintiffs were the victims of a corrupt and fraudulent criminal enterprise which resulted in deprivation of over $5,000,000 in legitimate claim determinations denied and/or incorrectly and/or fraudulently reduced. Plaintiffs have discovered evidence that other persons similarly situated have been victimized in a similar manner.

119.    Plaintiffs have uncovered a fraudulent scheme whereby engineering reports were fraudulently altered to avoid paying legitimate insurance claims. Plaintiffs have also discovered several instances where payments to the engineering companies were made regardless of the time and money expended.

120.    Plaintiffs bring this action against Defendants on their own behalf and, pursuant to New Mexico Law and Rules 23(a) and (b) of the Federal Rules of Civil Procedure, as a class action on behalf of a class of persons similarly situated which include the following:

> Any and/or all persons, pro se claimants, and/or others or entities who made claims to FEMA and/or the Defendants and filed a HPCCFAA claim between April 6, 2022 through the present and whose claim was denied in whole or in part based upon determinations that were altered by any Defendants after any Defendants ignored, manipulated, incorrectly, and/or fraudulently reduced claims that were submitted to FEMA as a result of the Hermit's Peak Calf Canyon Fire.

121. Excluded from the Class are Defendants, any entity in which one or more of the Defendants has a controlling interest or is a parent or subsidiary of said Defendants, any individual or entity already represented by counsel for these offenses, or any entity that is controlled by one of more of the Defendants and any of their officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns.

122. There are hundreds of members of the Class. Accordingly, the Class is so numerous that joinder of all members is impracticable. The Class is ascertainable, as the names and addresses of all Class Members can be identified in business records maintained by Defendants.

123. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to, or which directly and irrevocably conflict with, the interests of other Class Members. Plaintiffs are represented by counsel experienced and competent in the prosecution of complex class action litigation.

124.    Class Member Plaintiffs are represented by counsel experienced and competent in the prosecution of complex class action litigation.

125.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. Such common questions include, *inter alia*:

   a.    Whether Defendant FEMA improperly and unlawfully denied, altered, and/or reduced HPCCFAA determinations;

   b.    Whether Defendants, the Fluor Enterprise, and individuals at FEMA have engaged in a scheme to deny, alter, and/or reduce legitimate HPCCFAA claims;

   c.    Whether Defendants, the Fluor Enterprise, and individuals at FEMA have engaged in a scheme to improperly and unlawfully deny, alter, and/or reduce HPCCFAA determinations;

   d.    Whether Defendants, the Fluor Enterprise, and individuals at FEMA are purposefully prolonging claims and litigation for their own financial gain;

   e.    Whether Defendants, the Fluor Enterprise, and individuals at FEMA have engaged in these wrongful acts to avoid audits and/or scrutiny by FEMA thereby causing the denial in whole or in part of Class Members' claims;

   f.    Whether Defendants, the Fluor Enterprise, and individuals at FEMA have engaged in mail and wire fraud;

   g.    Whether Defendants, the Fluor Enterprise, and individuals at FEMA have engaged in a pattern of racketeering activity;

   h.    Whether Defendants, the Fluor Enterprise, and individuals at FEMA constitute an enterprise within the meaning of 18 U.S.C. § 1961(4);

   i.    Whether Defendants, the Fluor Enterprise, and individuals at FEMA conducted or participated in the affairs of the Defendant FEMA through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) through means including false sworn testimony;

j.     Whether Fluor's, Bell's, Garove's, Hernemar's, Wright Flood's, Colonial's, and Maxime's overt and/or predicate acts in violation of 18 U.S.C. § 1962(c) proximately caused injury to Plaintiffs' and Class Members' business or property;

k.     Whether Defendants, the Fluor Enterprise, and individuals at FEMA fraudulently concealed their scheme;

l.     Whether the Fluor Enterprise conspired to monopolize disaster relief services in violation of the Sherman Act Section 1 (15 U.S.C. § 1);

m.     Whether the Fluor Enterprise conspired to monopolize disaster relief services in violation of the Sherman Act Section 2 (15 U.S.C. § 2);

n.     Whether the non-FEMA Defendants unjustly enriched themselves to the detriment of Plaintiffs;

o.     Whether Defendant FEMA's perpetual delay in the HPCCFAA process unjustly denied Plaintiffs' claims beyond what Congress intended;

p.     Whether Defendants failure to find proper labor to administer the HPCCFAA unjustly and unlawfully impacted Plaintiffs claims under the HPCCFA;

q.     Whether Defendants acts and/or omissions unlawfully and unjustly prejudiced pro se claimants;

r.     Whether Defendants acts or omissions to use proper data analysis in burn scar damage claims improperly denied and/or reduced Plaintiffs' claims;

s.     Whether Defendants acts and/or omissions to use proper data analysis in flood and/or water damage claims improperly denied and/or reduced Plaintiffs' claims;

t.     Whether Defendants failure to hire properly certified professionals to assess flood, water, smoke, soot, and ash damage claims improperly denied and/or reduced Plaintiffs' claims;

u.    Whether Defendants acts and/or omissions to award emotional distress as a damage category in their analysis improperly denied and/or reduced Plaintiffs' claims;

v.    Whether Plaintiffs are entitled to medical monitoring as a damage category;

w.    Whether Defendants repeatedly and consistently stating that claimants do not need a lawyer prejudiced and/or improperly denied and/or reduced Plaintiffs' claims; and

x.    Whether or not New Mexico Law applies in this action.

126.    Plaintiffs' claims are typical of the claims of the Class Members because they originate from the same illegal, fraudulent, and confiscatory practices of Defendants, the Fluor Enterprise, and individuals at FEMA acted in the same way toward Plaintiffs and the Class.

127.    Plaintiffs will fairly and adequately protect the interests of the Class Members, are committed to the vigorous prosecution of this action, have retained counsel competent and experienced in class litigation, and have no interests antagonistic to or in conflict with those of the Class.  As such, Plaintiffs are adequate Class representatives.

128.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the Class.

129.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable.  Further, the expense and burden of individual litigation make it impossible for all the Class Members individually to redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**Damages**

130.     Plaintiffs were denied their legitimate claims for disaster relief which resulted in a loss exceeding $5,000,000.  The denial, reduction, and/or defrauding of Plaintiffs' claims thwarted Plaintiffs' ability to properly restore their property, which also resulted in diminished recoveries through the HPCCFAA, loss of economic value for damage to their property, failure to award flood and or water damage, failure to award damage to smoke, soot, and ash damage, failure to award emotional distress, and/or Defendants simply lost some claims and never awarded some Plaintiffs. Consequently, under 18 U.S.C. §§ 1964(c), Plaintiffs are entitled to treble damages, costs, attorney's fees, and prejudgment interest.

**COUNT I**

**Violation of APA; 5 U.S.C. § 706 - Contrary to Law.**

**Against Any and/or All Defendants.**

131.     Any foregoing and succeeding paragraphs and/or information of this Complaint are realleged and incorporated herein by reference as if set forth fully herein.

132.     The APA requires courts to "hold unlawful and set aside" agency action that is "not in accordance with law."[25]

133.      FEMA is an "agency" under the APA.[1]

134.     Defendants conduct and final determinations constitute "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."[2]

---

[25] 5 U.S.C. § 706(2)(A).

135.     Defendants conduct and final determinations are not in accordance with the law because New Mexico Law and the HPCCFAA entitles claimants to noneconomic damages for interference with personal comfort, annoyance, and inconvenience.

136.     FEMA's contrary interpretation of the law is unsupported by any authority. Indeed, it is contrary to the plain text and stated aim of the HPCCFAA and New Mexico law.

137.     Defendants conduct and final determinations harm Plaintiffs and other similarly situated Hermit's Peak Fire victims by depriving them of compensation to which they are entitled under the HPCCFAA.

138.     FEMA has acted contrary to law and is thus in violation of the APA. Defendants conduct and resulting final determinations are therefore invalid and should be set aside.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

**COUNT II**

**Violation of APA; 5 U.S.C. § 706-Exceeded Statutory Authority.**

**Against Any and/or All Defendants.**

139.     Any foregoing and succeeding paragraphs and/or information of this Complaint are reachleged and incorporated herein by reference as if set forth fully herein.

140.     The APA requires courts to "hold unlawful and set aside" agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."[26]

141.     Defendants' conduct and final determinations exceed and violate FEMA's statutory jurisdiction, authority, and limitations. The HPCCFAA requires FEMA to award claimants compensation for interference with personal comfort, annoyance, and inconvenience, and Congress allocated funds for that purpose. By choosing to categorically withhold data and information for compensation to Plaintiffs, FEMA's conduct constitutes interference with personal comfort, annoyance, and inconvenience, which exceeds FEMA's statutory authority and infringes on Congress's power to enact legislation and allocate funds for designated purposes.

142.     FEMA has acted contrary to law and is thus in violation of the APA. Defendants conduct and resulting final determinations are therefore invalid and should be set aside.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

## COUNT III

---

[26] 5 U.S.C. § 706(2)(C).

**Violation of APA; 5 U.S.C. § 706-Arbitrary, Capricious, and Abuse of Discretion.**

**Against Any and/or All Defendants.**

143.    Any foregoing and succeeding paragraphs and/or information of this Complaint are realleged and incorporated herein by reference as if set forth fully herein.

144.    The APA requires courts to "hold unlawful and set aside" agency action that is "arbitrary," "capricious," or an "abuse of discretion."[27]

145.    Defendants conduct and final determinations are arbitrary, capricious, and an abuse of discretion: FEMA offers no reasoned explanation for misconstruing and ignoring the plain text and stated aim of the HPCCFAA, as well as New Mexico law. FEMA offers no substantial justification for refusing to award claimants compensation for interference with personal comfort, annoyance, and inconvenience beyond its own patently erroneous interpretation of the HPCCFAA and New Mexico law. FEMA failed to consider the impact of its refusal to award claimants compensation for interference with personal comfort, annoyance, and inconvenience on the many victims of the Hermit's Peak Fire.

146.    FEMA's arbitrary and capricious abuse of discretion harms Plaintiffs and other similarly situated Hermit's Peak Fire victims by depriving them of compensation to which they are entitled under the HPCCFAA.

147.    FEMA has acted contrary to law and is thus in violation of the APA. Defendants conduct and resulting final determinations are therefore invalid and should be set aside.

148.    Without a proper factual or legal basis, Defendants have acted arbitrarily and capriciously, have abused their discretion, have otherwise acted not in accordance with law, and have taken unlawful action in violation of the APA, New Mexico Law, and the

---

[27] 5 U.S.C. § 706(2)(A).

HPCCFAA. FEMA's conduct is therefore unlawful and should be set aside as arbitrary and capricious under 5 U.S.C. § 706(2)(A).

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

**COUNT IV**

**Fluor and B&H's Conspiracy to Monopolize in Violation of Sherman Act**

**Section 1 (15 U.S.C. 1)**

**Against Defendants Fluor and B&H Only**

149.    Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

150.    Beginning at a time currently unknown to Plaintiffs, but at least as early as August 15, 2025, and continuing through the present, Defendants Fluor and B&H and their co-conspirators entered into an agreement to regularly exchange detailed timely, competitively sensitive and non-public information about their operations. This agreement is concerted action and an unreasonable restraint on trade in violation of the Sherman Act Section 1 (15 U.S.C. § 1).

151.    The relevant market is Federal Emergency Relief Services in the "East Zone" of the United States, which includes FEMA regions 3 and 4 (encompassing fourteen states in the eastern and southeastern United States).

152.    Consequently, Plaintiffs too were damaged by Defendants' conduct.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

## COUNT V

**Fluor and B&H's Conspiracy to Monopolize in Violation of Sherman Act**

**Section 2 (15 U.S.C. 2).**

**Against Defendants Fluor and B&H Only**

153.    Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

154.    Defendants Fluor and B&H's conduct constitute unlawful monopolization and conspiracy to monopolize under Sherman Act Section 2, 15 U.S.C. § 2.

155.    Defendant Fluor possesses monopoly power or a dangerous probability of monopoly power in the East Zone disaster relief work market. Defendant Fluor holds the exclusive right through an IDIQ contract to provide disaster recovery services to FEMA under the Fluor Prime Contract for the East Zone, comprised of FEMA Regions 3, 4, and

Headquarters Task Orders (*i.e.*, HPCC Fires). Subcontractors, like Defendant A2K, can only access this market through Defendant Fluor, creating insurmountable barriers to entry (and delay, harm, and/or damage to Plaintiffs).

156.    Defendants, by and through their officers, directors, employees, agents or other representatives, have entered into an unlawful agreement, combination, and conspiracy to monopolize the East Zone disaster relief work market in violation of Sherman Act Section 2, 15 U.S.C. § 2.

157.    Defendants have taken and are taking overt acts in furtherance of their conspiracy to unlawfully prevent Defendant A2K from participating in the East Zone disaster relief work market, including but not limited to: requesting that A2K invest time, energy, and resources into recruiting, vetting, hiring, and onboarding TACs for its roster that Fluor intended to steal from A2K, against the TACs desire, and force the TACs to re-align with B&H or a different subcontractor or otherwise no longer be eligible to work; falsely claiming that B&H had a subtract with Fluor, when it did not, to justify stealing A2K's TACs and prevent A2K from participating in the federal disaster relief market; unlawfully interfering with the A2K Contract by contacting and disseminating false and misleading statements to A2K-aligned and potential future A2K-aligned TACs with the intent to influence their decision to remain aligned with A2K and stealing A2K-aligned TACs from A2K's roster forcing the TACs to align with the rosters of other Fluor subcontractors, including B&H's roster; falsely claiming that the TACs onboarded by A2K during the August-October 2025 time period were previously onboarded by B&H under the Fluor Prime Contract; deploying the previously A2K-aligned TACs to the HPCC fires under subcontracts with B&H or other subcontractors; falsely claiming that A2K was no longer

part of the HPCC project in an email to various TACs dated September 22, 2025; and breaching the A2K Contract by telling B&H and other Fluor subcontractors that Fluor would no longer approve any new TACs onboarded by A2K.

158.    The purpose of Defendants' conspiracy is an exclusionary scheme in which Defendants remove the TACs from A2K and/or deny those TACs from A2K, thereby conspiring to achieve monopoly control over disaster relief work in the East Zone and effect a substantial amount of interstate commerce.

159.    Accordingly, Defendant A2K has claimed that they suffered and will continue to suffer injury to its business and property as a direct and proximate result of Defendants' unlawful conduct.

160.    The relevant market is Federal Emergency Relief Services, and the geographic market is the East Zone in the United States.

161.    Consequently, Plaintiffs too were damaged by Defendants' conduct.

162.    Plaintiffs are entitled to treble damage, attorney fees and costs, and an injunction against Defendants to end the ongoing violations alleged herein.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

**COUNT VI**

41

**Unjust Enrichment**

**Against Any and/or All Defendants, Except Defendant FEMA.**

163.     Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

164.     Causing delay and harm to Plaintiffs, Defendant B&H conspired with Defendant Fluor to steal Defendant A2K-aligned TACs and force those TACs to align with Defendant B&H or not work in the disaster relief market under the Defendant Fluor Prime Contract.

165.     Defendant B&H knowingly disseminated false information regarding Defendant A2K's status as a Defendant Fluor subcontractor, including Defendant A2K's ability to onboard and deploy TACs, to induce Defendant A2K-aligned TACs to leave Defendant A2K and align with Defendant B&H as well as unduly influence prospective TACs to avoid working with Defendant A2K and instead join Defendant B&H.

166.     Defendant A2K expended significant money and resources to onboard TACs including reviewing resumes, interviewing TACs, verifying and uploading all required onboarding documentation to Defendant Fluor's onboarding system; obtaining all required information for Defendant FEMA's security clearance process, assisting the TACS to navigate the complex Defendant FEMA security clearance process, generating Fluor-formatted resumes, ensuring all TACs received and reviewed all Defendant FEMA required training materials, and serving as the primary point of contact for each TAC through the onboarding process.

167.     As a direct and proximate result of Defendant B&H's conduct, Defendant A2K lost the value of work performed to onboard the TACs and all realized and future profits associated with the disaster relief work performed and will be performed in the future by

the Defendant A2K-aligned TACs and prospective TACs that were unduly influenced by Defendant B&H's dissemination of false information.

168.    Defendant B&H obtained the value of Defendant A2K's onboarding efforts as well as the profits earned and will be earned in the future by the TACs it aligned with as a result of conspiring to steal the TACs and disseminating false information to induce TACs to align with Defendant B&H instead of Defendant A2K.

169.    At any rate, and as described herein, Defendants have been unjustly enriched by means of fraud, duress, and/or undue advantage by their conduct described herein.

170.    As a direct and proximate result of Defendants negligent, and/or intentional, willful, and malicious conduct, Plaintiffs were unduly damaged by Defendants bad faith actions.

171.    Defendants have secured increased profits and other tangible benefits by its conduct described herein, including but not limited to, conspiring with B&H to steal A2K-aligned TACs, and delaying, denying, and/or reducing Plaintiffs' determinations.

172.    Alternatively, Defendants passively and/or directly benefited from Defendants' conduct described herein.

173.    It would be unjust and unconscionable for Defendants to retain the monies and benefits obtained from its conduct.

174.    Defendants' conduct has directly and proximately caused past, present, and future irreparable harm, loss of goodwill, loss of standing, loss of revenue, and loss of profits as well as any and/or all such other damages that may be proven at trial.

175.    By engaging in the conduct described herein, Defendants have been unjustly enriched by means of fraud, duress, and/or undue advantage.

176.     Defendants have secured increased profits and other tangible benefits by its conduct described herein, including, but not limited to, conspiring with Fluor to steal A2K-aligned TACs, and delaying, denying, and/or reducing Plaintiffs' determinations.

177.     It would be unjust and unconscionable for Defendants to retain the monies and benefits obtained from its conduct.

178.     Defendants' conduct has directly and proximately caused past, present, and future irreparable harm, loss of goodwill, loss of standing, loss of revenue, and loss of profits as well as any and/or all such other damages that may be proven at trial.

179.     Consequently, Plaintiffs too were damaged by Defendants' conduct.

180.     Plaintiffs are entitled to treble damage, attorney fees and costs, and an injunction against Defendants to end the ongoing violations alleged herein.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

## COUNT VII

### Fluor's Intentional Fraud

44

**Against Defendant Fluor Only**

181.    Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

182.    Defendant Fluor's conduct caused harmed and defrauded Plaintiffs in multiple ways as described herein.

183.    By engaging in the conduct described herein, Defendant Fluor made multiple material misrepresentations, including, but not limited to, requests to continue onboarding new TACs while assuring Defendant A2K that those TACs would remain aligned with Defendant A2K, that were significant enough to influence Defendant A2K's business decisions.

184.    The material representations made by Defendant Fluor were objectively false at the time they were made, including, but not limited to, Fluor not stealing new onboarded Defendant A2K-aligned TACs.

185.    Alternatively, Defendant Fluor made assurances for future performances, including keeping all the Defendant A2K-aligned TACs with Defendant A2K, that Fluor had no intention of keeping unless those TACs were aligned with Defendant Fluor subcontractors other than A2K.

186.    Defendant Fluor knew the representations described herein that it made to Defendant A2K were false.

187.    Alternatively, Defendant Fluor recklessly, and without any regard for the truth, made the representations described herein.

188.    Defendant Fluor, acting through its agents, including Defendant Fluor ED Smith-Reeve and Defendant Fluor Task Order Manager Cox, intended for Defendant A2K to rely upon its material misrepresentations.

45

189.    Defendant A2K did rely on Defendant Fluor's promises by expending its resources, including reviewing resumes, interviewing TACs, verifying and uploading all required onboarding documentation to Defendant Fluor's onboarding system; obtaining all required information for Defendant FEMA's security clearance process, assisting the TACS to navigate the complex Defendant FEMA security clearance process, generating Fluor formatted resumes, ensuring all TACs received and reviewed all Defendant FEMA required training materials, and serving as the primary point of contact for each TAC through the onboarding process at Defendant Fluor's request only for Defendant Fluor to steal those same TACs after being onboarded.

190.    Defendant A2K was justified in relying upon Defendant Fluor's material misrepresentations as it had a productive seventeen-year business relationship with Defendant Fluor with no prior indications of fraudulent conduct by Defendant Fluor.

191.    As a direct and proximate result of Defendant Fluor's intentional, willful, and malicious conduct, Defendant A2K lost the value of work performed to onboard the TACs; as well as all realized and future profits associated with the disaster relief work performed and will be performed in the future by the Defendant A2K-aligned TACs and prospective TACs that were unduly influenced by Defendant Fluor's bad faith conduct.

192.    Due to Defendant Fluor's intentionally fraudulent, malicious, and egregious conduct, Plaintiffs too are entitled to compensatory damages, including indirect damages for reasonably foreseeable harm resulting from the breach, punitive damages, non-foreseeable damages, and reasonable attorney's fees.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to

46

compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

## COUNT VIII

### Fraud

### Against Any and/or All Defendants.

193. Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

194. By engaging in the conduct described herein, Defendants made multiple material misrepresentations, including, but not limited to, letters of determinations ("LOD") to Plaintiffs while assuring Plaintiffs that those LODs were accurate, that were significant enough to influence decisions made by Plaintiffs to accept offers they believed were made in good faith by their own government.

195. The material representations made by Defendants were objectively false at the time they were made, including, but not limited to, Defendants misrepresenting the factual basis and accuracy of LODs.

196. Alternatively, Defendants made assurances for the performances of Defendants to assist Plaintiffs, that Defendants had no intention of accurately compensating Plaintiffs unless those employees and/or agents were misrepresenting, discounting, and/or not properly awarding Plaintiffs accurate LODs.

197. Defendants knew the representations described herein made to Plaintiffs were false.

198. Alternatively, Defendants recklessly, and without any regard for the truth, made the representations described herein.

199. Defendants, acting through its employees and/or agents, including but not limited to each of the non-FEMA Defendants, intended for Plaintiffs to rely upon its material misrepresentations.

200. Plaintiffs were justified in relying upon Defendants' material misrepresentations as they had no prior indications of fraudulent conduct by Defendants.

201. As a direct and proximate result of Defendants' intentional, willful, and malicious conduct, Plaintiffs lost the value of time and resources expended to accept their LODs; as well as being awarded proper damages concerning the accuracy of the burn scar severity, future flood and/or water damage, proper assessment of smoke, soot, and ash damage, and inter alia some claims were simply lost and/or ignored, any and/or all of which were inaccurately represented by Defendants' bad faith conduct.

202. Due to Defendants' intentionally fraudulent, malicious, and egregious conduct, Plaintiffs are entitled to compensatory damages, including indirect damages for reasonably foreseeable harm resulting from Defendants' conduct, punitive damages, non-foreseeable damages, and reasonable attorney's fees.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others

from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

## COUNT IX

### Defendant Fluor and B&H's Civil Conspiracy.

### Against Defendants Fluor and B&H Only

203. Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

204. By engaging in the conduct described herein to steal Defendant A2K-aligned TACs and exclude Defendant A2K from further work under the Fluor Prime Contract, Defendants Fluor and B&H have engaged in a civil conspiracy to commit fraud, interference with business relations, interference with prospective business relations, defamation, and business disparagement on Defendant A2K.

205. Defendants Fluor and B&H agreed to steal Defendant A2K-aligned TACs, nullify existing TAC Contracts, prevent formation of future TAC Contracts, and exclude Defendant A2K from the Federal Emergency Relief Services market, and damage Defendant A2K's reputation by means of committing fraud, interference with business relations, interference with prospective business relations, defamation, and business disparagement to Defendant A2K.

206. By engaging in the conduct described herein, Defendants Fluor and B&H have engaged in multiple unlawful and overt acts to commit fraud, interference with business relations, interference with prospective business relations, defamation, and business disparagement to Defendant A2K.

207. Defendant Fluor's conduct has directly and proximately caused past, present, and future irreparable harm, loss of goodwill, loss of standing, loss of revenue, and loss of

profits to Defendant A2K as well as any and all such other damages that may be proven at trial.

208.     Defendant B&H's conduct has directly and proximately caused past, present, and future irreparable harm, loss of goodwill, loss of standing, loss of revenue, and loss of profits to Defendant A2K as well as any and all such other damages that may be proven at trial.

209.     Consequently, Plaintiffs too were damaged by Defendants' conduct.

210.     Plaintiffs are entitled to punitive damages for Defendants reckless disregard, and/or intentionally fraudulent and malicious conduct under New Mexico and Federal Law.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

**COUNT X**

**Civil Conspiracy by any and/or all Defendants.**

211.     Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

212.     By engaging in the conduct described herein to defraud Plaintiffs, Defendants have engaged in a civil conspiracy to commit fraud, interference with business relations to the

detriment of Plaintiffs, interference with the execution of the HPCCFAA, and caused damage to Plaintiffs.

213.    Defendants Fluor and B&H agreed to steal Defendant A2K-aligned TACs, nullify existing TAC Contracts, prevent formation of future TAC Contracts, and exclude Defendant A2K from the Federal Emergency Relief Services market, and damage Defendant A2K's reputation by means of committing fraud, interference with business relations, interference with prospective business relations, defamation, and business disparagement to Defendant A2K.

214.    By engaging in the conduct described herein, Defendants Fluor and B&H have engaged in multiple unlawful and overt acts to commit fraud, interference with business relations, interference with prospective business relations, defamation, and business disparagement to Defendant A2K.

215.    Defendant Fluor's conduct has directly and proximately caused past, present, and future irreparable harm, loss of goodwill, loss of standing, loss of revenue, and loss of profits to Defendant A2K as well as any and all such other damages that may be proven at trial.

216.    Defendant B&H's conduct has directly and proximately caused past, present, and future irreparable harm, loss of goodwill, loss of standing, loss of revenue, and loss of profits to Defendant A2K as well as any and all such other damages that may be proven at trial.

217.    Plaintiffs are entitled to punitive damages for Defendants reckless disregard, and/or intentionally fraudulent and malicious conduct under New Mexico and Federal Law.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

## COUNT XI

### RICO: VIOLATIONS OF U.S.C. § 1962(C);

### By any and/or all Defendants, except Defendant FEMA.

218.     Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

219.     This claim for relief arises under 18 U.S.C. § 1962(c).

220.     As set forth above, Defendants have violated 18 U.S.C. § 1962(c) by conducting or participating, directly or indirectly, in the conduct of the affairs of Defendants, the Fluor Enterprise, and other individuals at FEMA through a pattern of racketeering.

221.     As a direct and proximate result, Plaintiffs and Class Members have been injured in their business or property by the predicate acts which make up the Defendants' patterns of racketeering activity through the conduct of Defendants, the Fluor Enterprise, and other individuals at FEMA.

222.    Specifically, Plaintiffs and Class Members have been injured in their business or property by having their legitimate insurance claims denied in whole or in part as a result of the scheme.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

## COUNT XII

### Negligence by any and/or all Defendants.

223.    Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

224.    Defendants had a duty to Plaintiffs to conduct themselves in a manner so as to not harm Plaintiffs.

225.    Defendants breached their duty to Plaintiffs by delaying, denying, and/or incorrectly determining Plaintiffs claims.

226.    As a direct, proximate, and foreseeable consequence of Defendants' conduct and/or negligence as herein alleged, Plaintiffs have suffered and will continue to suffer severe emotional pain and suffering, severe mental anguish, emotional distress, humiliation, embarrassment, fear and deprivation of familial, social, and/or career opportunities.

227.    As a direct, proximate and foreseeable consequence of Defendants' negligence as

herein alleged, Plaintiffs have incurred and will continue to incur costs for medical and/or psychological treatment for, including but not limited to legal costs associated with, the physical and emotional pain and suffering, severe mental anguish, emotional distress, humiliation, embarrassment, and fear caused by the acts and/or omissions of Defendants, which Plaintiffs have suffered and will continue to suffer because of the acts and/or omissions of Defendants; additionally, Plaintiffs have incurred and will continue to incur lost wages and business income.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

## COUNT XIII

### Nuisance by any and/or all Defendants.

228.    Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

229.    Defendants used their real and/or personal property in a manner that substantially and unreasonably impaired the Plaintiffs' use and enjoyment of their **personal** *and* **real** property without Plaintiffs' permission.

230.    Further, Defendants also caused substantial damage to Plaintiffs' real and/or personal property which Defendants have failed to compensate, repair, remediate, and/or

54

mitigate.

231.     As a result of Defendants' conduct, Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

## COUNT XIV

**Trespass by any and/or all Defendants:**

**Trespass to real property by Defendant FEMA and U.S. Government (as outlined by HPCCFAA); and trespass to chattels by any and/or all Defendants.**

232.     Any foregoing and succeeding paragraphs and/or information of this Complaint are restated and incorporated herein by reference as if set forth fully herein.

233.     Defendants interfered with Plaintiff's possession and control of real and/or personal property by physical invasion.

234.     Specifically, Defendant FEMA is liable to Plaintiffs for damages caused by the HPCC Fire, according the HPCCFAA.

235.     Furthermore, any other Defendant is liable to Plaintiffs for interfering with possession and/or control of Plaintiffs' proper compensation under the HPCCFA.

236.     As a result of Defendants' unlawful conduct, Plaintiffs sustained damage.

237.     As a direct, proximate, and foreseeable consequence of Defendants' willful and wanton misconduct and Defendants' acts and/or omissions as herein alleged, Plaintiffs have

incurred and/or will continue to incur costs for medical and/or psychological treatment for the physical and emotional pain and suffering, severe mental anguish, emotional distress, humiliation, embarrassment, and fear; additionally, Plaintiffs may have incurred and/or will continue to incur lost wages and business income.

238.    Defendants' actions were willful, reckless, and/or wanton, thereby subjecting the Defendants to punitive damages.

**WHEREFORE**, Plaintiffs request Judgment against Defendants awarding Plaintiffs actual damages in a fair and reasonable sum in an amount to be determined at trial sufficient to compensate Plaintiffs to be determined by the jury, together with their costs and attorney fees incurred herein; for punitive damages to be determined at trial in an amount set by law and/or the trier of fact sufficient to punish Defendants for the above- described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendants, and for such other and further relief as the Court may deem just and proper.

**REQUEST FOR RELIEF**

Wherefore Plaintiffs respectfully request that this Court:

1. Issue a declaratory judgment that Defendants' conduct and final determinations are arbitrary and capricious and/or not in accordance with law insofar as it refuses to compensate noneconomic damages for interference with New Mexico Law, personal comfort, annoyance, and inconvenience, and that Defendants acted in excess of statutory authority according to their conduct;

2. Issue an order vacating and setting aside the portion of Defendants' Determinations that refuses to compensate noneconomic damages for interference with personal comfort,

56

annoyance, and inconvenience in accordance with the APA; and/or failed to properly compensate Plaintiffs.

3. Issue an order enjoining Defendants from categorically withholding, denying, or refusing to award noneconomic damages when awarding compensation under the HPCCFAA;

4. Award Plaintiffs costs and reasonable attorney's fees; and Grant such other relief as the Court deems just and proper.

5. Plaintiffs demand their Seventh Amendment Constitutional Right to Trial by Jury, pursuant to Federal Rule of Civil Procedure 38(b).

6. Class Action Certification.

7. Damages and Punitive Damages.

8. Plaintiffs further request any further relief the Court deems just and proper.

Dated: April 6, 2026         .                    **Respectfully Submitted,**

                                                       **CROSS LAW FIRM, LLC**

                                                       By: *Gerald Lee Cross, Jr.*_____
                                                       Gerald Lee Cross, Jr., (Fed. D.N.M. #24-174)
                                                       Cross Law Firm, LLC
                                                       7930 Santa Fe Drive, First Floor
                                                       Overland Park, Kansas 66207
                                                       Tel: 505.235.5977
                                                       Email: lcross@crosslawfirm.us
                                                       ***ATTORNEY FOR PLAINTIFFS***